## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 13-00264-TLM |
| THOMAS MECHAM RICKS, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| _____ ) | |

### MEMORANDUM OF DECISION
_____

Thomas Ricks ("Debtor") commenced this chapter 11 case 16 months ago on February 19, 2013.[1] No plan of reorganization has yet been proposed. Debtor has acted as debtor in possession throughout the case, *see* § 1101(1) and § 1107(a), and no trustee has been sought or appointed.

A creditor, D.L. Evans Bank ("Bank"), sought relief from the § 362(a) automatic stay in April 2013. Doc. No. 70. After evidentiary hearings in August, this Court granted Bank's motion and terminated the stay.

The decretal ruling is an Order entered on August 30, 2013. *See* Doc. No. 168 ("Order"). The Court's findings of fact and conclusions of law were entered orally on August 26, 2013. *See* Doc. No. 167 (minute entry); Doc. No. 189 (transcript of oral ruling)("Decision").

_____

[1] Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11 U.S. Code, and rule references are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

After obtaining relief from the stay, Bank commenced a state court action against Debtor and a corporation, Ballentyne Ditch Company, Limited ("BDC") in September 2013. The Court is advised this litigation is Case No. CV OC 1317406 in the District Court of the Fourth Judicial District, State of Idaho (the "State Court Case").[2] In May 2014, Bank filed a motion in the State Court Case seeking to amend its complaint. Debtor responded with a "Motion for Contempt and Sanctions Relating to Violation of the Automatic Stay" in this Court. *See* Doc. No. 246 ("Motion"). A hearing was held on the Motion on June 23, and the matter was taken under advisement.[3]

At the hearing on June 23, the parties presented argument only. They effectively dealt with the matter as if it were a preliminary hearing, to be followed by an evidentiary hearing depending on the conclusions and rulings of the Court. Though not squarely within the procedural rules, the Court accepts the parties' suggested approach and will address the Motion on the present showing and argument. It does so on the record already before the Court, and without further

---

[2] No evidence was presented at the hearing on the pending Motion. However, the parties have peppered their submissions with copies of state court pleadings, and the same do not appear to be disputed except as to their legal consequence.

[3] Given the Court's ultimate resolution, it will not need to discuss the Motion's attempt to assert three separate theories (damages under § 362(k); contempt under § 105(a); and sanctions under "inherent powers") that, though conceptually related, have different procedural, substantive and evidentiary requirements.

MEMORANDUM OF DECISION - 2

hearing.[4]

## DISCUSSION AND DISPOSITION

Debtor recognizes that Bank was granted stay relief in order to commence or continue litigation in the Idaho state courts. But Debtor argues that Bank's motion to amend its complaint[5] exceeds the stay relief previously granted. Debtor believes the Order established boundaries on what Bank could pursue and, by seeking to assert further claims, Bank is liable for damages.[6] Debtor acknowledges that Bank views the Order differently, and suggests his Motion is intended as a tool by which the parties—and the State Court—could collectively gain this Court's interpretation and, if necessary, clarification, of the relief granted.[7]

### A. Advisory opinions

The Court is loathe to issue "advisory opinions." *See In re Preuit*, 2013

---

[4] The disputes between Bank and Debtor are multifaceted and long-standing, including specific disputes relating to water rights. As such, the record in this case is voluminous, and the Court takes judicial notice of the same. Fed. R. Evid. 201. Additionally, the factual findings previously made, and conclusions reached, constitute the law of the case and are treated as such.

[5] The details of the motion to amend are discussed in further detail *infra*.

[6] Debtor's submissions indicate the financial consequences of the alleged "contempt" or "stay violation" are less than $2,000. Doc. No. 249. The disputes between the parties have little to do with this presently de minimis expense. Debtor, of course, argues that other compensatory damages could be awarded under the Motion if sufficiently proved, but does not suggest what they are. Debtor also argues not just for a "money judgment" but also for imposition of a "punitive judgment" (*i.e.*, punitive damages) for the "clear violation" of the automatic stay.

[7] This justification or rationale for the Motion was not signaled in the Motion's text or in Debtor's briefing and was raised for the first time at hearing.

MEMORANDUM OF DECISION - 3

WL 2467976 at *7 (Bankr. D, Idaho June 7, 2013); *see also Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1112 (9th Cir. 2009). However, certain factors militate against a rejection of the Motion on the ground that it improperly seeks such an advisory opinion.

First, and importantly, the Motion asks for specific relief under § 362(k), and other statutory and/or inherent powers of this Court. Bank has objected to such relief. Therefore, the matter is at issue and must be resolved (even if, in doing so, little of the desired "guidance" might be provided).

Second, Debtor has represented that the State Court not only needs but has requested clarification of the scope and reach of the Order. Setting aside for the moment a concern that the State Court might have been inadequately informed,[8] there is authority that allows this Court to address the issue.

The Ninth Circuit in *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932 (9th Cir. 2009), faced a situation where a bankruptcy case was filed before the commencement of a state court trial. The plaintiff obtained stay relief to pursue certain bonding companies, using the debtor-contractor, a named defendant, as a witness. The order said "the stay is lifted so that the Creditor may seek to compel

---

[8] The arguments at hearing, especially by Debtor, suggest the State Court has been presented with and heard debates regarding the language in the *Order*. Nothing reflects that Debtor (or Bank for that matter) provided the *Decision* to the State Court. The Decision may have resolved some of that court's questions and, since a transcript of the Decision has been of record since December 2013, one would like to think that counsel appropriately advised the State Court.

MEMORANDUM OF DECISION - 4

the debtor . . . to participate in this trial as a witness and obtain judgment. However, Creditor may not proceed to enforce that judgment against the Debtor, or property of the estate[,] without further order of this court." Ultimately, the creditor settled with the insurance companies, debtor's state court counsel withdrew, creditor amended the complaint to assert claims against debtor for intentional fraud, and creditor received a default judgment. Creditor then filed a complaint in bankruptcy court seeking a determination that the judgment was entitled to preclusive effect and was nondischargeable under § 523(a)(2)(A).

On appeal, the Bankruptcy Appellate Panel held that the state court judgment lacked preclusive effect because the bankruptcy court had limited the scope of the stay relief granted. The Ninth Circuit affirmed, noting that stay relief orders are "strictly construed" in order to discourage creditors from misrepresenting to the bankruptcy court the actual or potential scope of the state court litigation and thereby ensuring that the bankruptcy court is fully informed as to the potential effect of granting relief. But it also noted the powers of the bankruptcy court under § 105(a) to issue orders *sua sponte*, including the ability to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules[.]" Apropos to the present matter, the Ninth Circuit stated:

> Furthermore, in the event that a previously unforseen cause of
> action becomes apparent during a trial proceeding pursuant to an order

MEMORANDUM OF DECISION - 5

granting relief from the automatic stay, numerous avenues of relief are available to a creditor to ensure that any resulting judgment does not violate the scope of the order. A creditor could petition the bankruptcy court for relief that is broad enough to encompass the cause of action; could seek an order from the bankruptcy court clarifying the relief from stay order, *see Alonso v. Summerville (In re Summerville)*, 361 B.R. 133, 144 (9th Cir. BAP 2007) (stating "[t]he bankruptcy court had jurisdiction to clarify its [relief from stay] order"); or, if a judgment has been entered on a cause of action that was not pending at the time the relief was granted, could seek retroactive relief from the stay that is broad enough to encompass the judgment, *see*, *e.g.*, *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir. 1995); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992) (stating "section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay" (citation omitted).

559 F.3d at 937. This Court, therefore, has the "jurisdiction to clarify" its prior Order, in addition to the ability to provide other relief. *Id.* Whether to do so appears to be committed to the Court's discretion.

Third, the Ninth Circuit has established that decisions over the existence and reach of the automatic stay are reserved to the federal courts. *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000) (*en banc*).[9] It is thus understandable that the State Court might be concerned if litigants before it are in sharp disagreement over the scope or extent of stay relief.

The Court concludes that the request—though unpleaded in Debtor's

---

[9] "In sum, bankruptcy courts have the ultimate authority to determine the scope of the automatic stay imposed by 11 U.S.C. 362(a), subject to federal appellate review. A state court does not have the power to modify or dissolve the automatic stay. . . . [I]f it proceeds without obtaining bankruptcy court permission, a state court risks having its final judgment declared void." 202 F.3d at 1087.

MEMORANDUM OF DECISION - 6

contempt and sanctions Motion—for clarification of the Order may be accommodated. It therefore addresses the scope of the prior stay relief and, in so doing, the motion to amend the State Court complaint which lies at the heart of the Motion. Ultimately, the Court concludes the present Motion may be resolved without the need for an evidentiary hearing as to the alleged "violation" of stay or damages.

### B. Relevant Background and Facts

A summary and condensed version of the factual context suffices.[10]

Debtor owed Bank on a $1,185,000 note secured by certain real property as described in a deed of trust ("DOT No. 2317"). Debtor was in default when he filed a chapter 11 bankruptcy in 2009. Bank sought relief from stay. The stay motion was resolved by agreement, but Debtor defaulted on the agreement. The case was converted to a chapter 7 liquidation. Debtor appealed the conversion. But again agreements were reached. Debtor's appeal and the chapter 7 case were dismissed, in part due to Debtor granting Bank additional real property collateral as described in another deed of trust ("DOT 6332").

Debtor's defaults continued. Bank commenced a foreclosure process and scheduled sales on the DOTs in October 2011. Prior to such sales, Debtor transferred properties, including those securing Bank, to his solely-owned entity,

---

[10] Much of this chronicle is found in the Decision.

MEMORANDUM OF DECISION - 7

Bellwood Village, LLC. Debtor completed the transfers without Bank's required, written consent. Bellwood then transferred the properties to Ricks Ranches, Inc., another Debtor-owned entity. Ricks Ranches filed a chapter 12 case in late October 2011, automatically staying Bank's foreclosure sales.

Bank again sought stay relief. On the same day Bank received such relief, Ricks Ranches filed a motion to dismiss the bankruptcy, conceding it lacked statutory eligibility for relief under that chapter.

Bank again noticed up foreclosure sales. Just before the scheduled sales in August 2012, Ricks Ranches transferred the properties back to Debtor, and Debtor filed a state court action seeking to enjoin the sales. Debtor was unsuccessful. Six days after the state court ruled against Debtor, he filed a chapter 12 bankruptcy.

Bank again sought stay relief and set that request for hearing in November 2012, in conjunction with a hearing on dismissal of the bankruptcy case. Prior to such hearing, Debtor conceded ineligibility for chapter 12 relief, and the case was dismissed.

Bank again scheduled foreclosure sales, now setting them for January 2013. The property under DOT No. 2317, consisting of parcels aggregating 35.8 acres, was sold. The sale of the property under DOT No. 6332 (a 3.79 acre parcel) was postponed to February 19, 2013. On that day and just prior to the rescheduled sale, Debtor filed a chapter 11 petition commencing the present bankruptcy case.

MEMORANDUM OF DECISION - 8

In ruling on Bank's stay relief request, this Court found and concluded as follows.

(1)  Bank had an allowed claim, and also a "colorable claim" as required for stay relief under Ninth Circuit law.  Decision at 15–23.[11]

(2)  Stay relief was warranted under § 362(d)(4) which allows for relief as against real property if the filing of the bankruptcy petition by Debtor "was part of a scheme to delay, hinder, or defraud creditors that involved . . . transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or . . . multiple bankruptcy filings affecting such real property."  Decision at 23–31.

(3)  Stay relief was also warranted "for cause" under § 362(d)(1), and under (d)(2) based on lack of equity in the property and an absence of need for the property for an effective reorganization.  Decision at 31–34.

Thus, the Order recited: "The Automatic Stay imposed by 11 U.S.C. § 362(a) is hereby terminated pursuant to §§ 362(d)(1), (d)(2) and (d)(4) as to [Bank] and as to the property identified as collateral in [DOT No. 6332]."  Doc.

---

[11]  As referenced in the Decision, *Arkison v. Griffin (In re Griffin)*, 719 F.3d 1126 (9th Cir. 2013), and *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897 (9th Cir. BAP 2011), make clear that stay relief is a summary proceeding which determines only if a creditor has a colorable claim.  It is not an apt vehicle for finally and definitively determining the creditor's claim or security.  *See also In re Ryerson*, 2014 WL 642876 at *6 (Bankr. D. Idaho Feb. 18, 2014) (discussing *Griffin* and *Veal*, and noting that, under such precedent, issues regarding the extent, validity and enforceability of claims "are not heard in the context of stay relief, but in other contexts and, perhaps, by other courts").

MEMORANDUM OF DECISION - 9

No. 168 at 1.

Bank also sought stay relief in regard to issues involving the previously-foreclosed property under DOT No. 2317, and as to the water rights associated with both properties. The Decision explained:

> While the focus of the [B]ank's arguments relate primarily to the [3.79 acre] parcel, it also seeks stay relief in order to resolve claims that it has to water rights on the 35.8 acre property it foreclosed upon back in January during the hiatus between bankruptcy cases. . . .
>
> In connection with the water rights on the [smaller] parcel, it appears clear that the [B]ank desires stay relief because it [has] yet to enforce its security interest and presumptively would enforce all interest including claims to any water.
>
> As to the previously foreclosed larger property, the relief sought by the bank is somewhat less clear. The [B]ank states that it wants a determination from me that the water rights related to that property are not property of this estate and thus not protected by the stay. The motion also suggests, however, that, quote, out of an abundance of caution, close[] quote, the [B]ank wants a determination that any actions that it might take vis-a-vis the ditch company [BDC] to obtain the rights will not violate the stay.

Decision at 13–14. The Court concluded:

> I finally have to turn to the question of water rights. The [B]ank and the [D]ebtor debated at great length issues regarding water rights that related to both the foreclosed property in January and those that relate to the [3.79 acre] parcel. The stay relief that I grant the [B]ank on the parcel under [Section] 362(d)(4), (d)(1) and (d)(2) will allow the [B]ank to seek adjudication of all its rights under applicable non-bankruptcy law and that would appear to include water rights as well if it so desires or is inclined to do so or is required to do so.
>
> As to the previously foreclosed property, I will deny the request of the [B]ank as found in Docket [No.] 70 that requests me to conclude

MEMORANDUM OF DECISION - 10

> that there is no stay on water rights. To reach that conclusion of the absence of stay would require an adjudication of the competing rights and interests and the competing arguments of the parties. However, I will grant the alternative request made by the [B]ank that the stay be terminated in order that the [B]ank can address and resolve this issue as to the water rights on the foreclosed property under state law and, if required, in state court.
>
> Simply put, because the 35.8 acre real property is not property of the estate, the question of whether the [B]ank obtained water rights in its foreclosure of that real property would be of no or at best minimal consequence to this case. Should debtor in a non-bankruptcy adjudicative process establish that the [D]ebtor has or still has a cognizable interest in water rights or Ballentyne Ditch Company shares, he can thereafter address those rights and those interests in the Chapter 11 case or plan. It does not require me to make that adjudication.
>
> I understand that the parties suggest that I could and should do so. They spent quite a bit of time at hearing on it but I decline to accept the invitation. Not only does the adjudication deal with property that is not property of the estate having been previously foreclosed upon, a determination of the respective rights and interest in property requires an adversary proceeding under Rule 7001(2) and (9) to determine the interest in property or to obtain a declaratory judgment related to the same. That's not before me. I have a stay lift motion. Stay relief is sufficient.
>
> So in conclusion, I'm granting relief to the [B]ank under the three described provisions of [Section] 362(d). In doing so, the [B]ank can address water rights as to both the foreclosed property and the smaller parcel. I will deny requests of either party that I adjudicate those issues as part of stay relief.

Decision at 34–36. Consistent with this ruling, the Order provided that the stay "is hereby terminated as to any water rights or Ballentyne Ditch Company stock relating to the above-described property [the 3.79 acre parcel] or to property deeded to Movant pursuant to a January 24, 2013, Correction Trustee's Deed [the

MEMORANDUM OF DECISION - 11

35.8 acre parcel]." Order at 2.

### C. The nature of the "amended" claims

Given this context, attention next turns to the State Court Case. Bank commenced an action against Debtor and BDC seeking a declaratory judgment that Bank owns the water, rights to the water, and the BDC stock it alleges was pledged or transferred under the Trustee's Deed. Bank also seeks a declaratory judgment that it is entitled to the delivery of water by BDC and an order directing BDC to so deliver the water and to transfer to Bank the BDC stock associated therewith. Motion at 9–10 (copy of complaint).[12]

The proposed amended complaint, a copy of which is provided by Debtor as an attachment to his Motion, adds as defendants the Idaho Department of Water Resources ("IDWR") and its director, and several individuals who are (along with Debtor) directors of BDC. Doc. No. 246-1 at 13–25. Bank's proposed amendment seeks the same declaratory relief and directive orders as did the original complaint. It also seeks an injunction (or alternatively a writ of mandamus) compelling the IDWR to cease recognizing BDC as a valid water delivery system, and remove any water rights from BDC and place them in the names of appropriate property owners. And the amended complaint seeks

---

[12] Bank's arguments are grounded in language in the deeds of trust transferring to the DOT trustee for Bank's benefit all right, title and interest in the real property; all easements, rights of way and appurtenances; and all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights).

MEMORANDUM OF DECISION - 12

compensatory monetary damages of $500,000 against Debtor, BDC, and the non-Debtor directors of BDC. Bank also seeks a punitive damage award against Debtor due to his alleged "oppressive, malicious and outrageous actions." The conduct is alleged to have occurred "after the [January 2013] foreclosure" and relates to Debtor's alleged efforts to prevent or frustrate delivery of water to Bank on the property it acquired by Trustee's Deed.[13]

Debtor's Motion is unclear as to why the proposed amendment violates the stay, other than to allege that it seeks judgment "against [Debtor] individually." At hearing, Debtor clarified this argument by asserting that the Order terminated the stay as to the real property, water rights and BDC stock, but not "as to Debtor" personally.

To the contrary, fairly and completely read, the Court terminated the stay not only as to the real property (both the foreclosed parcel and the 3.79 acre parcel), but authorized Bank to proceed with all remedies in relation to the real property—and, specifically, those related to the asserted water rights associated with those properties. In doing so, the Court acknowledged stay relief could entail litigation by Bank, Debtor and BDC over the extent of Bank's claim(s) to the water rights and/or stock. The view that somehow this did not include litigation

---

[13] Bank's objection to the Motion asserts the monetary and punitive damages flow from Debtor's conduct in the denial of water to Bank after delivery was requested in March 2013. Doc. No. 258 at 3. The bankruptcy petition was filed on February 19, 2013. Stay relief was granted in August 2013.

MEMORANDUM OF DECISION - 13

against Debtor personally is hard to credit. Indeed, Debtor did not raise "stay violation" arguments when the State Court litigation commenced and he was named as a party defendant, even though it would adjudicate and decree rights as between Bank and Debtor.

But what is apparent, even if inadequately presented, is that the specific claims against Debtor—that he is liable for "damages" due to his conduct relative to the delivery of water—were not specifically raised by Bank in its stay relief request[14] nor expressly addressed in the Order. True, some of that conduct allegedly occurred after the Order was entered in August. But much of the conduct, according to Bank, occurred after the delivery of the water was requested in the spring of 2013. Bank did not, in its prior stay relief motion, seek an order allowing it to adjudicate those claims against Debtor in the state court process.[15]

### D. Resolution

It is true that Debtors are not insulated from all of the consequences of their post-bankruptcy conduct. *See Groner v. Miller (In re Miller)*, 262 B.R. 499 (9th

---

[14] *See* Doc. No. 70.

[15] It could have done so. *See*, *e.g.*, *In re IK/S-Bar, LLC*, 2011 WL 6934488 at *4 (9th Cir. BAP Oct. 6, 2011) ("As the Ninth Circuit has long held, 'cause' exists for relief from stay under § 362(d)(1) where the issues are more appropriately adjudicated in a state court.") (citing *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1169 (9th Cir. 1990); other citations omitted); *Kronemyer v. American Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (9th Cir. BAP 2009) (identifying factors to consider in evaluating such cause). Such case law recognizes the possibility of allowing the stay to be lifted in order for a state court to adjudicate a claim against a debtor to final judgment, but preserving to the bankruptcy court issues as to the status, enforceability and collection of the claim.

MEMORANDUM OF DECISION - 14

Cir. BAP 2001). *Miller* explained that a request for sanctions arising from a debtor's post-petition conduct did not violate the stay. *Id.* at 507. However, if the movant obtains an award or judgment, the same can not be collected from estate property without obtaining an appropriate order from the bankruptcy court. *Id.*[16]

Here, pursuing this claim against Debtor to judgment reasonably requires more than a mere reliance on the mostly[17] post-petition timing of the conduct. As *Wardrobe* suggests, 559 F.3d at 937, when post-stay relief conduct suggests previously unidentified or unforseen causes of action, a creditor can ask the Court for additional stay relief as a prophylactic, or annulment of the stay (*i.e.*, retroactive relief from the stay), or an order clarifying the relief from stay order.

Assuming that Bank appreciated the possibility of personal causes of action only after entry of the August 2013 Order, it had options. Bank did not take the safe course in returning to this Court and asking for additional stay relief in order to amend the state court complaint and adjudicate Debtor's alleged liability. Nor did it return to ask for clarification of the Order (at least prior to the oral argument

---

[16] *Accord Richardson v. Runge Fin. Co. (In re Richardson)*, 2003 WL 22670823 (Bankr. D. Idaho Oct. 21, 2003) (in dealing with a chapter 7 debtor's post-discharge litigation, the Court stated "while his bankruptcy [discharge] did protect him from the results of his past acts, including attorney's fees associated with those acts, it did not give him carte blanche to go out and commence new litigation about the [discharged] contract without consequences."). *Id.* at *4 (quoting *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525, 532–34 (9th Cir. 1998)).

[17] Bank's motion to amend in State Court and objection to the Motion here suggest the cause arose at the time of the DOT sale in January 2013, which was a prepetition event, but that Debtor's behavior started after bankruptcy.

MEMORANDUM OF DECISION - 15

when both sides appeared to make such a pitch). Nor has Bank clearly asked for retroactive relief.

But the failure to ask for clarification or retroactive relief does not remove those from the panoply of the Court's powers. *See* § 105(a) (recognizing ability of Court to *sua sponte* take action or make determinations necessary or appropriate to, *inter alia*, enforce or implement its orders); *Summerville*, 361 B.R. at 140 (bankruptcy court retains jurisdiction to interpret or clarify its orders).

The Court concludes the most rational approach is to allow the State Court to adjudicate all aspects of the water right dispute related to both parcels. This is consistent with the sense of the Order and, importantly, the Decision on which the Order rested. The State Court is well-positioned to address and adjudicate the additional aspects of Debtor's potential compensatory and/or punitive liability. While this Court's Decision and Order may not have contemplated such issues, it is appropriate to grant Bank relief from the automatic stay in order to amend the complaint and proceed to adjudication.[18] Such relief is granted for "cause" under § 362(d)(1), and such relief will be granted retroactive to the filing of Bank's motion to amend. Thus, the stay will be annulled, resolving questions as to that motion's effectiveness to procedurally set the stage for the litigants and the State Court, and to save them all a redundant pleading process.

---

[18] The Court finds that the various factors addressed by the BAP in *Kronemyer* and in other case law supports such a conclusion that the State Court is the proper place to complete such adjudication.

MEMORANDUM OF DECISION - 16

### E. *Barton* issues

Finally, the Court must address yet another issue discussed by Debtor at hearing, though not raised or addressed in his written submissions. Debtor argues that though the initial Bank complaint may be consistent with the Order, the proposed amendment asserting liability for Debtor's post-petition conduct is improper under the Barton Doctrine.

The Barton Doctrine is derived from the case of *Barton v. Barbour*, 104 U.S. 126 (1881). It requires a party to "first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *Beck v. Fort James Corp. (Crown Vantage, Inc.)*, 421 F.3d 963, 970 (9th Cir. 2005) (discussing *Barton*). The purpose of the doctrine is to centralize bankruptcy litigation, which helps avoid inconsistent rulings from different courts. *Id.* Since a chapter 11 debtor in possession performs many of the duties of a trustee, the Barton Doctrine applies. *Mangun v. Bartlett (In re Balboa Improvements, Ltd.)*, 99 B.R. 966, 970 (9th Cir. BAP 1989).

There is an exception to the Barton Doctrine that flows from 28 U.S.C. § 959(a), which provides that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." This exception applies where the "officer is

MEMORANDUM OF DECISION - 17

actually operating the business, and only to acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise." *Crown Vantage*, 421 F.3d at 971–72. The exception does not apply when the transactions merely involve the administration or liquidation of the bankruptcy estate. *Id.* at 972. This Court has long recognized both the Barton Doctrine and the exception. *See U. and I. Inc. v. Fitzgerald (In re Campbell)*, 13 B.R. 974 (Bankr. D. Idaho 1981). As stated in *Campbell*, which involved a chapter 7 trustee: "Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." *Id.* at 976.

While there is an argument that the exception to the Barton Doctrine may here control, the Court sees little reason to perpetuate the commitment of time and resources—by the parties as well as the Court—to this issue. The issue of application of the Barton Doctrine is resolvable, and the exception rendered moot, if the Bankruptcy Court grants leave to commence the action in another forum.[19] The Court will do so here, as the resolution of all issues related to the water rights in a single proceeding is in the interests of judicial economy and in the parties' interests. It is also consistent with the stay relief Order initially entered. The

---

[19] As the Court's Order had already granted stay relief to Bank to pursue a state court action, granting "leave to commence the action" here refers to the filing of the motion to amend and the raising of the additional claims against Debtor.

MEMORANDUM OF DECISION - 18

annulment of stay allowing the motion to amend to be filed and heard in State Court goes hand-in-hand with the Court's decision that leave should and will be granted resolving the Barton issue.

**CONCLUSIONS**

To the extent Bank seeks to validate the motion to amend as falling within the August 2013 Order granting stay relief, it asks too much. The specific claims reflected in the amendment are not within what was previously presented or ruled upon.

However, the Court, in the exercise of its informed discretion and on the whole of the record, will terminate the automatic stay in order for those claims to be resolved by the State Court as a component of the litigation pending before it on the water rights issues. That termination will be retroactive to the date of the filing of the motion to amend. To the extent the Barton Doctrine is implicated and not resolvable through application of 28 U.S.C. § 959(a), the Court grants leave to Bank to assert, and to the State Court to adjudicate, the claims so raised in the amended complaint.[20] Any judgment as to Debtor's personal liability recovered by Bank shall be subject to and addressed in this chapter 11 case (if then pending) and this Court's jurisdiction. As a result of these several rulings, Debtor's Motion for relief under § 362(k) (and, alternatively, theories of contempt or inherent power)

---

[20] To be clear, the Court expresses no opinion on the merits of the disputes between the parties. These are matters reserved to the State Court.

MEMORANDUM OF DECISION - 19

will be denied.

      An Order will be entered accordingly.

DATED: July 1, 2014

*/s/ Terry L. Myers*
TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 20